IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| SINCLAIR L. ATKINS, JR., #32066-083, | ) Civil Action No. 3:09-1046-RBH-JRM |
| Plaintiff, | ) |
| vs. | )**REPORT AND RECOMMENDATION** |
| MARY M. MICHELL, WARDEN, | ) |
| Defendant. | ) |

Plaintiff filed this action, pro se, on April 22, 2009.[1] He is an inmate at the Federal Correctional Institution in Edgefield, South Carolina ("FCI-Edgefield"). Defendant is FCI-Edgefield Warden Mary M. Mitchell.[2] On May 15, 2009, Plaintiff filed an amended complaint ("AC"). Defendant filed a motion to dismiss ( pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6)) on August 17, 2009. Plaintiff, because he is proceeding pro se, was advised on August 18, 2009, pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), that a failure to respond to Defendant's motion to dismiss could result in the dismissal of his complaint. He did not respond to the Roseboro order and the undersigned, on September 28, 2009 issued an order allowing Plaintiff an additional fifteen days in which to advise the Court whether he wished to continue to prosecute this action. Plaintiff did not respond to the order and on October 26, 2009, the undersigned recommended that this action be dismissed pursuant to Fed. R. Civ. P. 41(b) for lack of prosecution. On November 17, 2009, Plaintiff filed an objection to the report and recommendation, stating that he had not received

---

[1] Pretrial matters in this case were referred to the undersigned pursuant to Rule 73.02(B)(2)(e), DSC. Because this is a dispositive motion, this report and recommendation is entered for review by the court.

[2] The correct spelling of Defendant's last name is Mitchell. See Defendant's Motion to Dismiss and Mitchell Decl.

anything from this Court in over three months. On November 24, 2009, the Honorable R. Bryan Harwell, United States District Judge, declined to adopt the recommendation and recommitted this action to the undersigned. On December 14, 2009, the undesigned ordered that Plaintiff had until January 15, 2010 in which to respond to Defendant's motion to dismiss. Plaintiff filed letters and a response in opposition to the motion to dismiss on December 28, 2009.[3]

## STANDARD OF REVIEW

Pro se complaints are held to a less stringent standard than those drafted by attorneys, Gordon v. Leeke, 574 F.2d 1147, 1151 (4th Cir.1978), and a court is charged with liberally construing a complaint filed by a pro se litigant to allow for the development of a potentially meritorious case. See Hughes v. Rowe, 449 U.S. 5, 9 (1980). The requirement of liberal construction, however, does not mean the court can ignore a clear failure to allege facts which set forth a claim currently cognizable in a federal district court. Weller v. Dept. of Soc. Servs., 901 F.2d 387 (4th Cir.1990).

A motion to dismiss pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure raises the fundamental question of whether a court is competent to adjudicate the claims brought before it. Generally, challenges to jurisdiction under Rule 12(b)(1) may be raised in two distinct ways: "facial attacks" and "factual attacks." Thigpen v. United States, 800 F.2d 393, 401 n. 15 (4th Cir.1986),

---

[3]Plaintiff has filed a number of letters (see Docs. 15, 17, 18, 26, 31, and 32) in this action. In some of his letters, Plaintiff appears to be attempting to assert additional claims, often against persons who are not parties to this action. He has not, however, filed a motion to amend or any proposed amended complaint. Further, he has not asserted that he exhausted his administrative remedies as to any proposed new claims.

Plaintiff also appears to ask the court to "summons" certain records. The Court generally does not enter the discovery process, which is governed by the Federal Rules of Civil Procedure. See Fed. R. Civ. P. 26 through 37, generally; see also Fed. R. Civ. P. 45. A plaintiff is required to direct his discovery requests to the appropriate parties in the manner contemplated by the Federal Rules of Civil Procedure. If a plaintiff seeks documents or other discoverable information with regard to his case, he needs to serve these individuals.

rejected on other grounds, Sheridan v. United States, 487 U.S. 392 (1988). A "facial attack" questions whether the allegations in the complaint are sufficient to sustain the court's jurisdiction. Id. If a "facial attack" is made, the court must accept the allegations in the complaint as true and decide if the complaint is sufficient to confer subject matter jurisdiction. Id.

A "factual attack" challenges the truthfulness of the factual allegations in the complaint upon which subject matter jurisdiction is based. In this situation, a "district court is to regard the pleadings' allegations as mere evidence on the issue, and may consider evidence outside the pleadings without converting the proceeding to one for summary judgment." Richmond, Fredericksburg & Potomac R.R. Co. v. United States, 945 F.2d 765, 768 (4th Cir. 1991) (citing Adams v. Bain, 697 F.2d 1213, 1219 (4th Cir. 1982)); Trentacosta v. Frontier Pac. Aircraft Indus., 813 F.2d 1553, 1558 (9th Cir.1987). To prevent dismissal, "the nonmoving party must set forth specific facts beyond the pleadings to show that a genuine issue of material fact exists." Richmond, 945 F.2d at 768 (citations omitted). A dismissal should only be granted in those instances in which "the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law." Id. (citations omitted).

When considering a 12(b)(6) motion to dismiss, the court must accept as true the facts alleged in the complaint and view them in a light most favorable to the plaintiff. Ostrzenski v. Seigel, 177 F.3d 245, 251 (4th Cir. 1999). The United States Supreme Court recently stated that "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " Ashcroft v. Iqbal, __ U.S. __, __, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw

3

the reasonable inference that the defendant is liable for the misconduct alleged." Id. Although "a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations," a pleading that merely offers "labels and conclusions," or "a formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555. Likewise, "a complaint [will not] suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancements.' "Iqbal, 129 S.Ct. at 1949 (quoting Twombly, 550 U.S. at 557).

Summary judgment is appropriate when there is no genuine dispute of material fact and when the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986). The non-moving party is entitled to have the court construe all disputed facts and all reasonable inferences drawn therefrom in the most favorable light, Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. Celotex Corp. v Catrett, 477 U.S. 317, 322 (1986). A party wishing to oppose summary judgment must present evidence tending to raise a material and genuine factual dispute. See Morrissey v. William Morrow & Co., 739 F.2d 962 (4th Cir. 1984), cert. denied 469 U.S. 1216 (1985); Foy v. Norfolk and W. Ry. Co., 377 F.2d 243 (4th Cir.), cert. denied, 389 U.S. 848 (1967); Bradford v. School Dist., 364 F.2d 185 (4th Cir. 1966); and Sturdivant v. Medical Eng'g Corp., 121 F.R.D. 51 (D.Md. 1988).

## **DISCUSSION**

Plaintiff appears to have brought his claims pursuant to Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388, 397 (1971). In Bivens, the Supreme Court

4

established a direct cause of action under the Constitution of the United States against federal officials for the violation of federal constitutional rights. A Bivens claim is analogous to a claim under 42 U.S.C. § 1983: federal officials cannot be sued under 42 U.S.C. § 1983 because they do not act under color of state law. See Harlow v. Fitzgerald, 457 U.S. 800, 814-820 & n. 30 (1982). Harlow, which is often cited for the principle of the qualified immunity of state officials for acts within the scope of their employment, was brought against a federal official. In footnote 30 of the opinion in Harlow, the Supreme Court stated that Harlow was applicable to state officials sued under 42 U.S.C. § 1983. In other words, case law involving § 1983 claims is applicable in Bivens actions and vice versa. Farmer v. Brennan, 511 U.S. 825 (1994); see also Mitchell v. Forsyth, 472 U.S. 511, 530 (1985); Osabutey v. Welch, 857 F.2d 220, 221-223 & n. 5 (4th Cir. 1988); and Tarantino v. Baker, 825 F.2d 772, 773-775 & n. 2 (4th Cir. 1987), cert. denied, North Carolina v. Tarantino, 489 U.S. 1010 (1989).

Plaintiff appears to allege that Defendant denied him medical treatment, failed to protect him from a sexual attack by another inmate, retaliated against him for filing grievances, and failed to properly follow the grievance system. AC at 3. He requests monetary damages and injunctive relief. AC at 5. Defendant contends that her motion to dismiss should be granted because: (1) this Court does not have subject matter jurisdiction over a Bivens action against Defendant in her official capacity; (2) Plaintiff has not exhausted his administrative remedies; (3) the pleadings fail to state a claim upon which relief can be granted under Rule 12(b)(6); (4) Defendant Mitchell is entitled to qualified immunity; and (5) the Prison Litigation Reform Act precludes any claim for compensatory damages as Plaintiff fails to show any physical injury.

### 1. **Official Capacity Claims**

Defendant contends that this court lacks subject matter jurisdiction to hear Plaintiff's claims against her in her official capacity. This court lacks subject matter jurisdiction as to Plaintiff's Bivens claims for monetary damages against Defendant in her official capacity. The United States cannot be sued without its consent, and consent is a prerequisite to a suit against the United States. United States v. Mitchell, 463 U.S. 206, 212 (1983). The United States has not consented to suit under the Bivens doctrine. The bar of sovereign immunity cannot be avoided by naming officers or employees of the United States as defendants. Gilbert v. Da Grossa, 756 F.2d 1455, 1458 (9th Cir. 1985); cf. Hawaii v. Gordon, 373 U.S. 57, 58 (1963). Claims against Defendant in her official capacity, to the extent that Plaintiff is seeking monetary damages, are barred by the doctrine of sovereign immunity. See Hagemeier v. Block, 806 F.2d 197, 202 (8th Cir. 1986), cert. denied, 481 U.S. 1054 (1987); Gilbert, 756 F.2d at 1458.

### 2. **Administrative Remedies**

Defendant contends that Plaintiff failed to exhaust his available administrative remedies as to his Bivens claims. The Bureau of Prisons ("BOP") has a three-tiered administrative grievance process. See 28 C.F.R. §§ 542.10 et seq.; see also Gibbs v. Bureau of Prison Office, FCI, 986 F.Supp. 941, 943 (D.Md.1997). An inmate may complain about any aspect of his confinement by first seeking to informally resolve the complaint at the institution level. 28 C.F.R. § 542.13. If the matter cannot be resolved informally, the inmate may file a formal written complaint (Administrative Remedy Request) to the Warden. 28 C.F.R. § 542.14. The matter will be investigated, and a written response provided to the inmate. Id. If dissatisfied with the response, the inmate may appeal to the Regional Director. 28 C.F.R. § 542.15(a). If dissatisfied with the regional

response, the inmate may appeal to the General Counsel. Id. Appeal to the General Counsel is the final level of agency review. 28 C.F.R. § 542.15(a). A claim has not been administratively exhausted until it has been filed with the General Counsel. Administrative complaints must be filed within 20 days of the date of incident giving rise to the complaint occurred. 28 C.F.R. § 542.14(a).

Roy Lathrop, a Paralegal Specialist at FCI-Edgefield, states that he conducted a diligent search of the administrative remedy records maintained by the BOP. He provides that the Administrative Program database reveals that Plaintiff has not exhausted his administrative remedies on any of the issues he has brought forth in his complaint. On June 9, 2009, Plaintiff filed a Request for Administrative Remedy with the FCI-Edgefield Warden. This concerned Plaintiff's medical care (medication and testing for an enlarged prostate). On June 29, 2009, the Warden responded to Plaintiff's Administrative Remedy and indicated that Plaintiff was receiving appropriate medical care for his prostate and that his Administrative Remedy was denied. Lathrop states that Plaintiff did not appeal the Warden's decision at any other level of the administrative remedy process. Additionally, Lathrop states that Plaintiff did not file an Administrative Remedy at any level of the process regarding his allegations of being sodomized or denied access to the grievance procedures. Lathrop Decl.

Plaintiff has not shown that he exhausted his administrative remedies as to any of his claims. In his opposition memorandum, Plaintiff claims that he made a "good-faith effort" to exhaust his remedies. He, has, however, not alleged that he filed any Administrative Remedy as to anything other than his medical claim. Plaintiff appears to allege that he exhausted his remedies because he wrote letters to the Regional Director and Central Offices. Plaintiff, however, has presented no copies of anything to show the actions he took and nothing to indicate that he appealed his

grievances. Assuming, in the light most favorable to Plaintiff, that he did appeal his Administrative Remedy concerning his medical claims to the Regional Director, he still has not asserted or shown that he appealed the denial to the final level of agency review (General Counsel). See 28 C.F.R. § 542.15(a).

### 3. **Medical Claims**

Plaintiff appears to allege that Defendant violated his constitutional claims by failing to provide medical care for his medical condition (an enlarged prostate).[4] Defendant contends that Plaintiff fails to show that she has been deliberately indifferent to any of Plaintiff's serious medical needs.

In the case of Estelle v. Gamble, 429 U.S. 97 (1976), the Supreme Court reviewed the Eighth Amendment prohibition of punishments which "involve the unnecessary and wanton infliction of pain," Id., quoting Gregg v. Georgia, 428 U.S. 153, 169-73 (1976). The court stated:

> An inmate must rely on prison authorities to treat his medical needs; if the authorities fail to do so, those needs will not be met.
>
> * * * * * * *
>
> We therefore conclude that deliberate indifference to serious medical needs of prisoners constitutes the "unnecessary and wanton infliction of pain," Gregg v. Georgia, supra, at 182-83, 96 S.Ct. at 2925 (joint opinion), proscribed by the Eighth Amendment. This is true whether the indifference is manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed. Regardless of how evidenced, deliberate indifference to a prisoner's serious illness or injury states a cause of action under § 1983.

Estelle, 429 U.S. at 103-105. (Footnotes omitted).

---

[4] He also stated that he wished for his "medical files to be summons [sic]." AC at 3. As discussed below, Defendant has provided a copy of Plaintiff's medical records.

Despite finding that "deliberate indifference to serious medical needs" was unconstitutional, the court was careful to note however, that "an inadvertent failure to provide adequate medical care" does not meet the standard necessary to allege an Eighth Amendment violation.

> Thus, a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner. In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs.

Estelle, 429 U.S. at 107.

The Court of Appeals for the Fourth Circuit has also considered this issue in the case of Miltier v. Beorn, 896 F.2d 848 (4th Cir. 1990). In that case, the court noted that treatment "must be so grossly incompetent, inadequate or excessive as to shock the conscience or to be intolerable to fundamental fairness (citations omitted). . . nevertheless, mere negligence or malpractice does not violate the Eighth Amendment." Id. at 851.

The Supreme Court defined "deliberate indifference" in the Eighth Amendment context in Farmer v. Brennan, 511 U.S. 825 (1994). The court held:

> [A] prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health and safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference. This approach comports best with the text of the Amendment as our cases have interpreted it. The Eighth Amendment does not outlaw cruel and unusual "conditions"; it outlaws cruel and unusual "punishments." An act or omission unaccompanied by knowledge of a significant risk of harm might well be something society wishes to discourage, and if harm does result society might well wish to assure compensation. The common law reflects such concern when it imposes tort liability on a purely objective basis. [Citations omitted]. But an official's failure to alleviate a significant risk that

> he should have perceived but did not, while no cause for commendation,
> cannot under our cases be condemned as the infliction of punishment.

Id. at 837-38.

Unless medical needs were serious or life threatening, and the defendants were deliberately and intentionally indifferent to those needs of which he was aware at the time, a plaintiff may not prevail. Estelle, supra; Farmer v. Brennan, supra; Sosebee v. Murphy, 797 F.2d 179 (4th Cir. 1986).

Plaintiff fails to show that Defendant was deliberately indifferent to any of his serious medical needs. Hector Lopez, M.D., is the Medical Officer at FCI-Edgefield. He states that the medical history documentation that accompanied Plaintiff during his transfer to FCI-Edgefield revealed Plaintiff was being treated for hypertension and benign prostatic hyperplasia (BPH, also known as an enlarged prostate). When Plaintiff arrived at FCI-Edgefield, he was being treated with Tamsulosin HCI (Flomax) for his enlarged prostate. Dr. Lopez states that Tamsulosin is not used by the BOP, so Plaintiff was placed on Doxazosin, another alpha-blocker used to treat prostate enlargement. He performed a complete medical history and physical examination of Plaintiff on January 26, 2009. Dr. Lopez documented that Plaintiff had an enlarged prostate with urinary obstruction, gave Plaintiff a prescription for Doxazosin, ordered a prostate specific antigen ("PSA") test, and ordered several other blood tests. He states that a PSA, along with a digital rectal examination, can help detect the possible presence of prostate cancer. Blood was drawn on April 3, 2009, and on April 10, 2009, Dr. Lopez received the results of laboratory testing which revealed an elevated PSA. Dr. Lopez noted that Plaintiff had no previous history of an elevated PSA, and he initiated consultation with a consultant urologist.

On April 17, 2009, Dr. Lopez saw Plaintiff during a chronic care clinic appointment. Plaintiff reported that he was doing "ok," and claimed he was supposed to have a prostate biopsy while he was

at the county jail, but did not because he was released to FCI-Edgefield. Dr. Lopez states that Plaintiff reported difficulty urinating, but denied other symptoms. The dosage of Plaintiff's Doxazosin was increased, Ciprofloxacin (an antibiotic) was prescribed, and Plaintiff was told that he had been scheduled for an appointment with a urologist. On June 18, 2009, the consultant urologist examined Plaintiff and noted that Plaintiff reportedly had an enlarged prostate for about a year and Doxazosin was not improving Plaintiff's ability to void. The urologist's impression was that Plaintiff had an enlarged prostate with probable acute urinary retention. He recommended that a Foley catheter with leg bag be applied, and a follow-up examination be conducted in three months. Finasteride was prescribed as well as an increased dosage of Doxazosin. Dr. Lopez states that Plaintiff was provided with the increased dosage of Doxazosin and would be provided with the Finasteride after it was requested from the BOP Central Office. On June 24, 2009, Plaintiff was examined by medical staff at FCI-Edgefield because his Foley catheter had fallen out. Medical staff indicated they were going to place the catheter back, but Plaintiff stated he did not need it replaced because he was able to urinate. The catheter was not replaced, and Plaintiff was instructed to contact medical staff if he could not urinate. Dr. Lopez states that Plaintiff has and will continued to receive continuous and adequate medical care consistent with the proven standards of care. Lopez Decl. Copies of Plaintiff's medical records also indicate that Plaintiff received treatment consisting of examinations (including an outside consultation with a urologist), medications, and blood tests. Defendant's Ex. 4.

Plaintiff appears to disagree with the type and amount of medical treatment he received. "Although the Constitution does require that prisoners be provided with a certain minimum level of medical treatment, it does not guarantee to a prisoner the treatment of his choice." Jackson v. Fair,

11

846 F.2d 811, 817 (1st Cir. 1988). The provision of medical care by prison officials is not discretionary, but the type and amount of medical care is discretionary. See Brown v. Thompson, 868 F. Supp. 326 (S.D.Ga. 1994). A disagreement as to the proper treatment to be received does not in and of itself state a constitutional violation. See Smart v. Villar, 547 F.2d 112 (10th Cir. 1976); Lamb v. Maschner, 633 F. Supp. 351, 353 (D.Kan. 1986). Although Plaintiff believes that he should have received different medical treatment, he fails to show that Defendant's actions or inactions rose to the level of a constitutional violation.

### 4. **Failure to Protect**

Plaintiff appears to allege that Defendant failed to protect him from a sexual assault by his cellmate. Defendant contends that Plaintiff's allegation that he was sodomized is false and there is no evidence that she was deliberately indifferent to Plaintiff's personal and physical safety. She argues that Plaintiff fails to show that she knew or should have known that his cellmate would allegedly attack him; she took immediate action once she was made aware of Plaintiff's allegation; and even though Plaintiff admitted he had not been sodomized as alleged, staff moved him to another cell because his cellmate grabbed his buttocks.

Deliberate or callous indifference on the part of prison officials to a specific known risk of harm states an Eighth Amendment claim. Pressly v. Hutto, 816 F.2d 977, 979 (4th Cir. 1987). Not every injury suffered by one inmate at the hands of other inmates, however, translates into constitutional liability for the prison officials responsible for the victim's safety. See Farmer v. Brennan, 511 U.S. 825, 835 (1994). In Farmer, the Supreme Court defined deliberate indifference, holding that "a prison official may be held liable under the Eighth Amendment for denying humane conditions of confinement only if he knows that inmates face a substantial risk of serious harm and

disregards that risk by failing to take reasonable measures to abate it." Id., at 847. The test is not whether an official knew or should have known of the possibility of harm, but whether he did, in fact, know of it and consciously disregarded that risk. "[T]he official must be both aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Id., at 837. While the objective information known to the official may be used to infer the knowledge he actually had, and to draw inferences about his actual state of mind, those inferences are not conclusive. Further, the Eighth Amendment is not violated by the negligent failure to protect inmates from violence. Whitley v. Albers, 475 U.S. 312, 319 (1986); Moore v. Winebrenner, 927 F.2d 1312 (4th Cir. 1991), cert. denied, 502 U.S. 828 (1991); Pressly, supra.

Plaintiff fails to show that his Eighth Amendment rights were violated because he has not shown that Defendant knew of a substantial risk of serious harm to him and consciously disregarded that risk. Dewick Bryant ("Bryant"), a Lieutenant at FCI-Edgefield, states that on Wednesday, April 29, 2009 while making a routine visit to the Special Housing Unit ("SHU"), he received a telephone call from Warden Mitchell. She informed Bryant that she received an Inmate Request to Staff form in which it appeared that Plaintiff alleged he had been sexually assaulted by his cellmate. Bryant immediately interviewed Plaintiff who claimed that his cellmate had, approximately two weeks prior, grabbed his behind in a sexual nature. Plaintiff stated there were no other advances made towards him, and no penetration was made. Bryant states that Plaintiff said that an unidentified Lieutenant responded to his Inmate Request to Staff, and made a cell change for him. Plaintiff stated he believed the sexual advance was made on him with the intention of him moving to another cell. He stated he was doing well with his new cellmate and had no further issues. Bryant reviewed the SHU cell

13

rotation log book and verified the cell move. He submitted his findings to the Warden and ended his involvement in the matter. Bryant Decl.

Kahle Vining ("Vining"), a Lieutenant at FCI-Edgefield, states that during the time period at issue he was assigned as the Special Investigation Supervisor ("SIS"). The SIS is responsible for conducting investigations of violations of the law of the United States or infractions of the regulations of the BOP which occur within the confines of the facility. On April 30, 2009, Vining conducted an interview with Plaintiff and FCI-Edgefield's Chief Psychologist concerning Plaintiff's allegations. Plaintiff stated his cellmate had grabbed his butt. He claimed that this former cellmate wanted a cell to himself and told Plaintiff to ask to be moved to another cell. Plaintiff stated that when he told his cellmate "no," his cellmate grabbed his butt cheek, squeezed it, and told him he had a nice butt. Vining states that Plaintiff did not believe it was a sexual assault, just his cellmate's way of making him feel uncomfortable so he would ask to be moved to another cell. Plaintiff reported to Vining that he told the Evening Watch Lieutenant, on the evening the incident occurred, that his cellmate had grabbed his butt. Plaintiff stated the Lieutenant asked his cellmate if he was playing around, and Plaintiff's cellmate admitted he had grabbed Plaintiff's butt and stated it was nice. The Lieutenant then moved Plaintiff to another cell. Vining states that Plaintiff reported that his cellmate touched him only once in the week they were cellmates. Vining asked Plaintiff to identify the inmate and Plaintiff could only describe the inmate as a Mexican who had been in the SHU for about eighteen months. Vining asked Plaintiff why he had not said anything to anyone before then. Plaintiff stated it was because he did not feel as though a sexual assault had occurred. When specifically asked if he had been sodomized, Plaintiff replied that he had not, but made the statement because he felt the Government was sodomizing him. Vining states that no further action was taken

because it seemed very clear that Plaintiff made the statement to simply draw attention to himself and Plaintiff admitted that he had in fact not been sodomized. Vining Declaration. Daniel Trent, Ph.D., the Chief Psychologist for FCI-Edgefield, also interviewed Plaintiff. Plaintiff reported to Trent that he did not feel as though a sexual assault had occurred. Trent Declaration.

### 5. **Retaliation**

Plaintiff appears to allege that Defendant retaliated against him for filing grievances by making statements that he was a "snitch." He appears to allege that the alleged sexual assault occurred because of this. As noted above, Defendant contends that Plaintiff was not sodomized. Defendant states that she did not place any inmates in a cell with Plaintiff for the purpose of assaulting or bullying him. She also states that she has never referred to Plaintiff as a "snitch" for exercising his right to petition for grievances. Mitchell Decl., Paras. 9 and 10.

Plaintiff fails to show that Defendant retaliated against him for filing grievances. He has provided nothing to support his allegations. Bare assertions of retaliation do not establish a claim of constitutional dimensions. See Adams v. Rice, 40 F.3d 72 (4th Cir. 1994), cert. denied, 514 U.S. 1022 (1995). In order to state a claim for retaliation, an inmate must show that the alleged retaliation had an adverse impact on the exercise of his constitutional rights. Id. at 75. "In the prison context, we treat such claims with skepticism because '[e]very act of discipline by prison officials is by definition "retaliatory" in the sense that it responds to prisoner misconduct.'" Cochran v. Morris, 73 F.3d 1310 (4th Cir. 1996)(en banc), citing, Adams, 40 F.3d at 74. To the extent that Plaintiff alleges that he was sodomized by his roommate on March 26, 2009 for filing his Request for Administrative Remedy, his claim fails because the alleged assault occurred before Plaintiff filed his Request for Administrative Remedy (filed June 9, 2009).

15

### 6. **Grievances**

Plaintiff may be attempting to allege a claim concerning his access to a grievance procedure. Access to administrative remedies is not itself a constitutionally protected right. See Adams v. Rice, 40 F.3d 72 (4th Cir.1994); Flick v. Alba, 932 F.2d 728, 729 (8th Cir.1991). Further, allegations that Defendant did not follow BOP policies or procedures, standing alone, do not amount to constitutional violations. See United States v. Caceres, 440 U.S. 741 (1978); see also Riccio v. County of Fairfax, Virginia, 907 F.2d 1459, 1469 (4th Cir. 1990)(if state law grants more procedural rights than the Constitution requires, a state's failure to abide by that law is not a federal due process issue); Keeler v. Pea, 782 F. Supp. 42, 44 (D.S.C. 1992)(violations of prison policies which fail to reach the level of a constitutional violation are not actionable under § 1983).

### 7. **Qualified Immunity**

Defendant contend that she is entitled to qualified immunity. The Supreme Court in Harlow v. Fitzgerald, 457 U.S. 800 (1982), established the standard which the court is to follow in determining whether a defendant is protected by qualified immunity.

> Government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.

Harlow, 457 U.S. at 818.

The Court of Appeals for the Fourth Circuit has stated:

> Qualified immunity shields a governmental official from liability for civil monetary damages if the officer's "conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." "In determining whether the specific right allegedly violated was 'clearly established,' the proper focus is not upon the right at its most general or abstract level, but at the level of its application to the specific conduct being challenged." Moreover, "the manner in which this [clearly established]

right applies to the actions of the official must also be apparent." As such, if there is a "legitimate question" as to whether an official's conduct constitutes a constitutional violation, the official is entitled to qualified immunity.

Wiley v. Doory, 14 F.3d 993 (4th Cir. 1994)(internal citations omitted), cert. denied, 516 U.S. 824 (1995). As discussed above, Plaintiff fails to show that Defendant violated his established constitutional or statutory rights. Therefore, Defendant is entitled to qualified immunity in her individual capacity.

## CONCLUSION

Based on review of the record, it is recommended that Defendant's motion to dismiss (Doc. 19) be **granted** as Plaintiff cannot bring claims against Defendant in her official capacity for monetary damages and Plaintiff cannot show that he has exhausted his administrative remedies. Alternatively, it is recommended that Defendant's motion be treated as a motion for summary judgment[5] and **granted** for the reasons discussed above.

                                          Joseph R. McCrorey
                                          United States Magistrate Judge

February 1, 2010
Columbia, South Carolina

**The parties' attention is directed to the important notice on the attached notice**.

---

[5] As matters outside the pleadings have been considered.

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

> Larry W. Propes, Clerk
> United States District Court
> 901 Richland Street
> Columbia, South Carolina 29201

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).